UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WILLIE GATES, JR., | Case No. 21-10167 |
| Plaintiff, | Linda V. Parker |
| v. | United States District Judge |
| COMMISSIONER OF SOCIAL SECURITY, | Curtis Ivy, Jr.<br>United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 14, 15)**

Plaintiff Willie Gates brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act (the "Act"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 14), the Commissioner's cross-motion for summary judgment (ECF No. 15), Plaintiff's reply (ECF No. 16) and the administrative record (ECF No. 12).

For the reasons below, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 14), **GRANT** Defendant's

motion for summary judgment (ECF No. 15), and **AFFIRM** the Commissioner's decision.

**I. DISCUSSION**

    **A. Background and Administrative History**

Plaintiff alleges his disability began on March 24, 2019, at the age of 44. (ECF No. 12, PageID.67). On March 27, 2019, he applied for disability insurance benefits and supplemental security income. In his disability report, he listed ailments which diminished his ability to work. The ailments included: two mini-strokes on March 24, 2019, heart attack in 2017, diabetes, amputated toe on left foot, broken right foot in 2016, status as legally blind, and hypertension. (*Id.* at PageID.271). His application was denied on June 27, 2019. (*Id.* at PageID.67).

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). On May 28, 2020, ALJ Patrick MacLean held a hearing, at which Plaintiff and a vocational expert ("VE"), Joanne White, testified. (*Id.* at PageID.90-142). On June 19, 2020, the ALJ issued an opinion which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at PageID.67-82). Plaintiff later submitted a request for review of the hearing decision. On December 4, 2020, the Appeals Council denied Plaintiff's request for review. (*Id.* at PageID.53). Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on January 25, 2021.

**B.     The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 24, 2019, the alleged onset date.  (ECF No. 12, PageID.69).  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: status-post mini strokes with residual left-sided weakness; diabetes; diabetic retinopathy; diabetic polyneuropathy; osteomyelitis left foot; status-post amputation left foot/toe; status-post surgery of right foot fracture; stage 4 kidney disease; hyperlipidemia; and history of myocardial infarction with catheterization.  (*Id.* at PageID.69-70).  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id.* at PageID.70).  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> to perform sedentary work . . . [except he can] lift up to
> 10 pounds occasionally except never climb ladders, ropes
> or scaffolds; occasionally climb ramps or stairs
> frequently balance, stoop, crouch, and kneel;
> occasionally crawl; frequently handling and fingering of
> objects bilaterally; avoid concentrated exposure to

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

> extreme cold; avoid concentrated exposure to excessive vibration; avoid concentrated use of hazardous moving machinery; and avoid all exposure to unprotected heights. Limited to occupations requiring frequent near acuity without working with small objects or small print. Based on physical symptoms, work is limited to simple, routine, and repetitive tasks that can be learned on the job in 30 days or less; performed in a work environment free of fast-paced production requirements involving only simple work-related decisions.

(*Id.* at PageID.70-80). At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at PageID.80-81). At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were existing jobs in significant numbers within the national economy that Plaintiff could perform, such as order clerk, document preparer, and stone setter. (*Id.* at PageID.81-82). The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from March 24, 2019, through the date of the decision.

   C.   **Framework for Disability Determinations**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during

4

the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[2] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E. Analysis

Plaintiff makes two arguments in this appeal. He argues first that the ALJ erred in crafting an RFC that is unsupported by opinion evidence. He asserts the ALJ played doctor and impermissibly relied on his own interpretation of medical evidence to conclude that Plaintiff had manipulative and vision limitations. His second and final argument is that the step five determination is not supported by substantial evidence because of inconsistencies between the jobs listed and the RFC.

#### 1. RFC

During June 2019, examining and non-examining consultative physicians issued opinions on Plaintiff's residual functional capacity. Examining physician Dr. Shaw opined that Plaintiff could engage in work activities while sitting, standing, and walking short distances at a time, and he could push and pull at least 20 pounds. Further, Plaintiff could engage in simple, repetitious, not highly cognitive activities without machinery operation or climbing heights. (ECF No. 12, PageID.861). The ALJ found this opinion "generally persuasive" as supported by the underlying examination, which the ALJ accurately characterized as

"unremarkable except for decreased range of motion of the lumbar spine." (*Id.* at PageID.79). Even so, evidence admitted to the record after Dr. Shaw rendered her opinion showed left upper and lower extremity weakness of 3/5, which the ALJ stated supports less physically demanding exertional level and additional manipulative limitations. (*Id.*).

Dr. Nguyen, a State agency physician, reviewed medical records up to June 25, 2019, before issuing an opinion. This doctor opined that Plaintiff could occasionally lift and carry 20 pounds or frequently lift and carry 10 pounds, and he could stand or walk six hours in a workday. (*Id.* at PageID.156). They also opined that Plaintiff did not have any manipulative or visual limitations. (*Id.* at PageID.157). The ALJ found this opinion unpersuasive. He stated the opinion did not adequately consider the combined effects of the impairments which support a less physically demanding exertional level. And the ALJ noted that evidence post-dating the opinion supports additional manipulative and visual limitations. (*Id.* at PageID.79).

There is no other opinion evidence in the record.

The ALJ limited Plaintiff to frequently handling and fingering of objects bilaterally and to frequent near acuity without working with small objects or small print. No medical professional gave an opinion identical to these limitations. Plaintiff questions how the ALJ arrived at a limitation in fingering and handling

8

without an opinion stating such limitations. Similarly, the ALJ limited Plaintiff to frequent near acuity without working with small objects or small print without an identical opinion from a medical professional. Plaintiff insists there was no basis to conclude his visual acuity was the same in each eye since he complained of constantly blurred vision in the right eye but not in the left eye. Plaintiff argues that, because the ALJ's RFC is not consistent with any medical opinion, the ALJ "played doctor" by interpreting raw medical data, and thus these RFC limitations are not supported by substantial evidence.

Plaintiff's argument is based on the proposition that RFC limitations must come from a medical opinion, but this assertion lacks merit. The Sixth Circuit has "previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) (citing *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017) and *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013)). As noted in *Tucker v. Commissioner of Soc. Sec.*, 775 F. App'x 220 (6th Cir. 2019), the Sixth Circuit has "[n]o bright-line rule . . . directing that medical opinions must be the building blocks of the residual functional capacity finding;" rather, "the administrative law judge must make a connection

between the evidence relied on and the conclusion reached." *Id.* at 226. That is what the ALJ did here with both physical impairments and vision issues.

The ALJ discussed the medical opinion evidence, the other medical evidence, and Plaintiff's subjective statements about his muscle strength. There are treatment records from August to November 2019, created after the consultative physicians issued their opinions. Plaintiff was twice found to have weakness in the left upper and lower extremities rated at 3/5, even though before he had 5/5 strength in the extremities. (ECF No. 12, PageID.957, 969). Given this weakness, the ALJ concluded that Plaintiff is more limited than the doctors opined. So, giving Plaintiff the benefit, the ALJ, after weighing the evidence, limited Plaintiff to sedentary work with only frequent handling and fingering bilaterally rather than adopting the opinions that Plaintiff had no restrictions.

Plaintiff did not suggest what further limitation the ALJ should have added to the RFC, and he did not provide any opinion evidence in support of his application. Plaintiff bears the burden of proving he is disabled. He did not marshal evidence suggesting that the RFC is not limited enough to incorporate all of Plaintiff's limitations.[3]

---

[3] The bilateral limitation works in Plaintiff's favor—the bilateral limitation reduces functional capacity than one-sided limitation and likely reduced the types and numbers of available jobs. Any error in including this restriction favors Plaintiff, and thus remand for further consideration would be futile. *See Mosed v. Comm'r of Soc. Sec.*, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) ("Plaintiff's argument that the ALJ erred in assessing a *more*

The ALJ discussed the ophthalmology treatment records post-dating the opinion evidence. In December 2019 and February 2020, Plaintiff showed distance vision of "light only"/counting fingers in the left eye and 20/70 vision in the right eye, without correction. (ECF No. 12, PageID.975, 991). The ALJ also mentioned Plaintiff's diabetic retinopathy diagnosis and complaints of vision problems. (*Id.* at PageID.74). The ALJ permissibly noted that this evidence shows limitation in Plaintiff's eyesight, contrary to Dr. Nguyen's opinion, so he limited Plaintiff to only frequent near acuity and work without small objects or small print.[4]

"An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). The ALJ reviewed and weighed what evidence is in the record, which again included no opinion evidence submitted by Plaintiff.

The undersigned also notes that the ALJ did not interpret "raw medical data," such as MRIs or other specialized testing that requires expert interpretation.

---

*restrictive* RFC than that opined by the State agency consultants is curious and unavailing.") (emphasis in original).
  [4] Plaintiff argues that since his left and right eye had different findings on examination, the ALJ had no basis for determining that his visual acuity was the same in each eye. (ECF No. 13, PageID.1010). The ALJ expressly noted the different findings for each eye in his decision. (ECF No. 12, PageID.74). So the ALJ did not assume Plaintiff's eyesight was the same in both eyes. And as a practical matter, it would be illogical to limit a claimant to frequent near acuity in one eye and some other acuity limitation in the other eye.

A notation, for example, that Plaintiff had weakness in the extremities does not require medical expert interpretation to be understood by laypeople. Likewise, Plaintiff's testimony about his eyesight and records demonstrating abnormality in both eyes with reduced vision capability is not "raw medical data." Finally, it is not as if the ALJ lacked any opinion evidence at all. He found Dr. Shaw's opinion persuasive, but adopted greater manipulative and vision restrictions because of additional evidence entered into the record after those opinions were rendered. The ALJ was not interpreting all the medical evidence on his own without the guidance of any medical opinions.

The Commissioner contends that Plaintiff's argument is like the argument raised and rejected in *Jones v. Comm'r of Soc. Sec.*, 2021 WL 4205061 (E.D. Mich. June 30, 2021). The undersigned agrees. There, the ALJ found the opinions of the non-examining medical consultants persuasive, but imposed greater postural, manipulative, and exertional limitations than they did because of the plaintiff's testimony and subjective complaints. *Id.* at *4. The plaintiff argued the ALJ erred by rejecting the opinion evidence and substituting his own medical judgment to fashion the RFC. The court disagreed, noting that an RFC can be supported by substantial evidence even without a consistent physician opinion and that "[c]ourts in this circuit have routinely found RFC assessments that are more restrictive than the opinion evidence to be supported by substantial evidence." *Id.* (citing

12

*Drinkwine v. Comm'r of Soc. Sec.*, 2019 WL 4866144, at *3 (E.D. Mich. Aug. 8, 2019), *adopted*, 2019 WL 4626674 (E.D. Mich. Sept. 24, 2019)). Further, the plaintiff, as here, did not meet his burden of showing a need for greater restriction. Thus, as in *Jones*, Plaintiff's arguments lack merit.

    2.    Step Five

Plaintiff argues that the ALJ erred at Step Five. After a series of hypothetical questions portraying a person with Plaintiff's characteristics and functional limitations, the vocational expert ("VE") listed three jobs Plaintiff could perform that exist in significant number in the national economy: order clerk, document preparer, and stone cutter.

Plaintiff contends that the order clerk and document preparer jobs are performed at reasoning level 3 which conflicts with the RFC limitation to simple, routine, repetitive tasks. He argues that the document preparer and stone cutter jobs are inconsistent with the limitation to no work with small objects or small print because of work with small print and small objections, respectively. (ECF No. 14, PageID.1010-12).

Both arguments lack merit. The Sixth Circuit has left open "the possibility that jobs requiring reasoning level two or three might conflict with a claimant's simple-task limitation," but noted that "an ALJ satisfies her duty to inquire [about any conflicts] if she asks the VE whether the VE's testimony is consistent with the

13

DOT and receives an affirmative response." *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 435-36 (6th Cir. 2016). "[I]n this Circuit, the ALJ satisfies his duty of investigation by asking the vocational expert if his testimony conflicts with the DOT." *Cavanaugh v. Saul*, 2021 WL 1169745, at *7 (E.D. Mich. Mar. 29, 2021)) citing *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013)); *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App's 313, 317 (6th Cir. 2020) ("All that is required before an ALJ can rely on vocational evidence provided by a vocational expert is that the ALJ either ensure that the evidence does not conflict with the information in the DOT or obtain a reasonable explanation for any conflict."); *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 468 (6th Cir. 2017) ("We have found it sufficient to satisfy [the affirmative duty to inquire whether a vocational expert's evidence conflicts with the information provided by the DOT] where the ALJ asks the vocational expert if there is a conflict.").

Here, the ALJ asked the VE if the jobs cited and the VE's testimony were "consistent with and within the scope of the Dictionary of Occupational Titles and its companion publication." (ECF No. 12, PageID.139). The VE responded in the affirmative, except that the issue of percent-off-task an employee can be while maintaining gainful employment, which is irrelevant here. (*Id.*). Thus, the ALJ satisfied his duty of investigation.

Moreover, because Plaintiff failed to object to the VE's testimony at the administrative hearing, he has waived the right to raise the issue here. *See McCarley v. Berryhill*, 2018 WL 1477668, at *2 (E.D. Mich. Mar. 27, 2018) (quoting *Lyon v. Comm'r of Soc. Sec.*, 2013 WL 1149967, at *4 (W.D. Mich. Mar. 19, 2013) (collecting cases)). Plaintiff's counsel had a chance to question the VE, but counsel did not ask about any inconsistency between the listed jobs and a limitation to simple, routine tasks. (*See* ECF No. 12, PageID.139-40).

Plaintiff's argument related to the alleged inconsistency between the limitation to no small objects or small print and the document preparer and stone cutter jobs is similarly unavailing. The ALJ asked the VE if her testimony was consistent with the Dictionary of Occupational Titles and her testimony, to which, for relevant purposes, she responded in the affirmative. And because Plaintiff did not challenge or object to the VE's testimony on this topic, she has waived the argument. Finally, the Commissioner's point that any error here is harmless is well taken. Even if the ALJ erred in accepting the stone cutter and document preparer jobs, the error would be harmless because the order clerk job does not require work with small objects or small print.[5] The VE testified that there are around 110,000

---

[5] Plaintiff argues in reply that this job would not be available because it is performed at a reasoning level of 3, which he argues is inconsistent with simple, routine work. (ECF No. 16, PageID.1050-51). As established above, even if there is an inconsistency, the ALJ satisfied his duty of investigation and Plaintiff waived that argument.

15

order clerk jobs available in the national economy. (ECF No. 12, PageID.137). This number of available jobs is considered a sufficiently significant number of available jobs. *See, e.g.*, *Blackburn v. Comm'r of Soc. Sec.*, 748 F. App'x 45, 49 (6th Cir. 2018) (83,000 jobs provided substantial evidence to deny disability claim) (citing *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 906 (6th Cir. 2016) ("[S]ubstantial evidence supports the conclusion that [claimant] could perform at least two jobs that are meaningfully available locally (200 jobs) and nationally (6000).")).

### F.   Conclusion

Plaintiff has the burden of proof on his statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has not shown legal error that would upend the ALJ's decision. For all these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 14), **GRANT** Defendant's motion for summary judgment (ECF No. 15), and **AFFIRM** the Commissioner of Social Security's decision.

## II.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 5, 2022
s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge